UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD DAUB,                    :
                                 :CIVIL ACTION NO. 3:15-CV-1066
          Plaintiff,             :
                                 :(JUDGE CONABOY)
          v.                     :
                                 :
CAROLYN W. COLVIN,               :
Acting Commissioner of           :
Social Security,                 :
                                 :
          Defendant.             :
                                 :

_____

**MEMORANDUM**

Here we consider Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  (Doc. 1.)  Plaintiff protectively filed an application for benefits on April 20, 2012, alleging disability beginning on September 13, 2011.  (R. 14.)  He later amended the onset date to July 7, 2013.  (*Id.*)

Plaintiff's claim was initially denied on August 22, 2012. (R. 14.)  On September 19, 2012, he requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  A hearing was held on December 31, 2013, before ALJ Reana K. Sweeney.  (R. 32-93.) Plaintiff appeared in at the hearing along with his attorney, Crystal Mcintyre.  (R. 32.)  Cheryl Buston, a Vocational Expert ("VE"), also testified.  (*Id.*)

In her January 10, 2014, Decision, ALJ Sweeney concluded Plaintiff had the following severe impairments: cervicalgia;

cervical disc disease; cervical spondylosis; myofascial pain; and hiatal hernia/gastroesophogeal reflux disease.  (R. 16.)  ALJ Sweeney also concluded that Plaintiff's medically determinable mental impairments of Psychotic Disorder with delusions, Depressive Disorder, NOS, and Generalized Anxiety Disorder were nonsevere. (*Id.*)  She determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the listings.  (R. 17.)  The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work but with certain nonexertional limitations and that he was capable of performing jobs that existed in significant numbers in the national economy. (R. 18-25.)  The ALJ therefore found Plaintiff had not been disabled under the Act since the alleged onset date of July 7, 2013, through the date of the decision.  (R. 25.)

With this action, Plaintiff argues that the decision of the Social Security Administration is error for the following reasons: 1) the ALJ erred in finding that Plaintiff's mental health impairments were nonsevere; 2) the ALJ did not properly evaluate the opinion of Robert Brummett, M.D., a treating physician; and 3) the ALJ erred in assessing Plaintiff's credibility and substantial evidence does not support her credibility evaluation.  (Doc. 14 at 1-2.)  After careful consideration of the administrative record and the parties' filings, I conclude Plaintiff's appeal is properly denied.

2

## I. Background

### A. *Procedural Background*

Plaintiff filed this action on May 29, 2015.  (Doc. 1.)   He appeals the denial of benefits made final by the April 2, 2015, Appeals Council denial of his request for review of the ALJ's decision (R. 1).

Defendant filed her answer and the Social Security Administration transcript on August 13, 2015.  (Docs. 9-10.) Plaintiff filed his supporting brief on October 25, 2015 (Doc. 14), after requesting and being granted an extension of time within which to do so (Docs. 11, 12).  Defendant filed her opposition brief on October 16, 2015. (Doc. 15.)  Plaintiff filed his reply brief on December 3, 2015.  (Doc. 16.)  Therefore, this matter is fully briefed and ripe for disposition.

### B. *Factual Background*

Plaintiff was born on May 4, 1964.  (R. 24.)  He was forty-nine years old on the alleged disability onset date.  (*Id.*) Plaintiff has a limited education.  (*Id.*)

### 1. **Impairment Evidence**

As noted above, the ALJ determined that Plaintiff had numerous severe physical impairments and nonsevere mental impairments.  In this background section, I will focus on evidence of impairments related to Plaintiff's claimed errors.

3

*a.   Physical Impairments*

Because Plaintiff focuses on the pain in his back and neck (*see* R. 42, 233), I will review evidence related to these physical problems during the relevant time period.  He states that the origin of the problem was a C1 fracture of the neck and cervical spine sustained when he fell down the stairs at his house in October 2005.  (R. 233.)  He stated that he worked through the pain until he got hurt on September 13, 2011.  (*Id.*)

Plaintiff had an x-ray of his cervical spine on September 30, 2011, due to midback pain extending into his neck for four months. (R. 309.)  The "Impression" was straightened lordosis which may have been due to positioning or muscle spasm, mild concavities at C4 through C6 end plates which may have been degenerative, and a widened space on the left between the dens and lateral mass of C1 compared to the right which may have been sequela to prior trauma. (*Id.*)

On May 1, 2012, Plaintiff went to MedExpress with complaints of neck and upper back pain.  (R. 329.)  He was seen by Dr. Cecil Holliman who noted that Plaintiff believed he reinjured his neck while lifting at work.  (*Id.*)  Physical examination was normal except for mild tenderness over C5-C7 spinous processes with tenderness over the upper ridge of the trapezius bilaterally.  (R. 330.)  Plaintiff was prescribed Soma and Percocet, and was instructed to follow up with his own doctor if he had not improved

4

in five days.  (*Id.*)

On June 13, 2012, Christopher D. Kager, M.D., of Lancaster Neuroscience and Spine Associates evaluated Plaintiff's neck pain on Dr. Brummett's referral.  (R. 369-71.)  Dr. Kager noted that Plaintiff was on pain medication at the time but had not had any recent physical therapy or injections.  (R. 370.)  He also noted that Plaintiff had obtained an attorney and applied for disability. (*Id.*)  Physical examination was normal except that Plaintiff's cervical range of motion was mildly limited.  (*Id.*)  Dr. Kager's plan was to review Plaintiff's x-rays, have him get an MRI of the cervical spine, and thereafter make further recommendations.  (R. 370.)  Dr. Kager discussed with Plaintiff that he should make every effort to stop smoking because smokers had a significantly higher rate of chronic spinal pain and degenerative spine disorders. (*Id.*)  He also noted that he could not make any recommendation at the time regarding restrictions or recommendations about disability.  (R. 370-71.)

Dr. Kager saw Plaintiff for followup on June 27, 2012.  (R. 365-368.)  Dr. Kager noted that he had reviewed his past medical history, surgical history, social and family history, medications, allergies, and review of systems and he found that there were no significant changes.  (R. 366.)  On examination, Dr. Kager found that Plaintiff was neurologically normal and his cervical range of motion was mildly limited.  (*Id.*)  Dr. Kager also noted that he

5

reviewed Plaintiff's x-rays and MRI scan and they showed some minor degeneration and disc bulging which did not appear severe as well as some mild facet joint degeneration.  (*Id.*)  Dr. Kager set out the following "Plan":

> I discussed his situation with him extensively today.  I cannot recommend surgical intervention given his primary complaint of neck pain and a relatively benign MRI appearance.  I do believe he should be evaluated for possible facet injections or rhizotomies, and they may wish to pursue a bone scan prior.  He had many questions regarding prescriptions, work status, and disability, and I advised him again that I would not become involved with this, although I do not believe he would be on disability or restriction from what I can see on his MRI.

(R. 366.)

In July, August, and September 2012 Plaintiff underwent a series of medial branch blocks and other procedures.  (R. 392, 393, 414, 435.)  He reported variable results through August 2013 to Dr. Robert Guriguis.  At times Plaintiff stated that pain was fifty percent reduced from the pretreatment level, Percocet was helping with the residual pain, and he denied side effects from the medication except for mild sedation. (R. 703, 705, 708, 712, 714, 716.)  On a few occasions, including on August 7, 2013, Plaintiff said that his pain had worsened and Percocet was not helping enough.  (R. 700, 710.)

From March through August 2013, Plaintiff also treated with Dr. Brummett at Allcare Family Health, P.C.  (R. 737-46.)  He

regularly complained of neck pain, noting he had flareups, that he was taking his medication as prescribed and was tolerating his medications well.  (R. 737, 740, 743, 745.)  On physical examination Dr. Brummett noted no abnormal findings related to the spine or head.  (R. 738, 741, 744, 746.)

On September 24, 2013, Dr. Brummett completed a Pennsylvania Department of Public Welfare Health-Sustaining Medication Assessment Form.  (R. 731-32.)  He identified Plaintiff's diagnosis as "anxiety, cervicalgia, psychotic disorder with delusions."  (R. 731.)  Dr. Brummett opined that Plaintiff was permanently disabled with the primary diagnosis of cervicalgia and spinal stenosis, and the secondary diagnosis of psychotic disorder, NOS.  (R. 732.)  He indicated his assessment was based on physical examination, review of medical records, clinical history, and appropriate tests and diagnostic procedures.  (*Id.*)

b.   *Mental Impairments*

On May 1, 2012, Plaintiff reported experiencing panic attacks when he was seen at MedExpress with chief complaints of neck and upper back pain.  (R. 329.)

On May 11, 2012, Plaintiff reported to Robert Brummett, M.D., that he was feeling anxious and experiencing panic attacks.  (R. 339.)  He reported that he had lost his job.  (*Id.*)  It was reported that he had a history of anxiety.  (*Id.*)  He was diagnosed with panic attacks and prescribed a trial of Klonopin.  (*Id.*)

7

On August 7, 2012, Louis Laguna, Ph.D., conducted a psychological consultative examination.  (R. 395-96, 398-402.)  He noted that Plaintiff stated "I have anxiety," and endorsed some symptoms of depression.  (R. 400.)  Dr. Laguna concluded that Plaintiff did not have a major depressive disorder but appeared to suffer from a dysthymic disorder for a number of years.  (*Id.*)  He stated it did not sound like Plaintiff had a panic disorder and his symptoms were not typical of an anxiety disorder.  (*Id.*)  Rather, Dr. Laguna thought Plaintiff confused feelings of anger with a panic attack.  (R. 401.)  Dr. Laguna diagnosed Plaintiff with dysthymic disorder, alcohol dependence (early full remission) and generalized anxiety disorder.  (R. 401.)  He assessed a GAF of 55 and noted that, regarding activities of daily living, Plaintiff was able to cook, clean, shop, take care of his own personal care, health and hygiene as well as manage funds completely.  (*Id.*)  Dr. Laguna also concluded that Plaintiff's impairments did not affect his abilities to function in a work setting.  (R. 395-96.)

On August 16, 2012, Richard Williams, Ph.D., a State agency psychological consultant reviewed Plaintiff's file and concluded Plaintiff did not have a severe mental impairment.  (R. 98-100.)

Plaintiff was admitted to Philhaven Hospital on July 7, 2013, based on a "302 petition" filed by his wife because of threatening behavior toward various family members.  (R. 544.)  It was also reported that he had paranoid ideation and auditory hallucinations.

8

(*Id.*)  Cynthia Fonder, M.D., recorded that Plaintiff reported a significant history of drug and alcohol abuse and that he had been sober for two years from alcohol and clean from drugs for five years.  (*Id.*)  Plaintiff was diagnosed with Psychotic Disorder, not otherwise specified, history of polysubstance abuse, and history of alcohol abuse.  (R. 544.)  Plaintiff was discharged on July 15, 2013.  In the Discharge Summary, Dr. Fonder noted that Plaintiff was alert and oriented times three, there was no indication of delusions or hallucinations, he described his mood as ok, and his affect was appropriate.  (R. 545.)  At admission Plaintiff's GAF was assessed to be 28 and at discharge it was assessed at 50.  (R. 544.)  Plaintiff's medications at discharge were Omeprazole for GERD, Buspirone for anxiety, Citalopram for depression, Abilify for mood stability, Cogentin to prevent side effects, Percocet if needed for pain, Soma if needed for muscle spasms, and Clonazepam if needed for anxiety.  (R. 545.)

From March through August 2013, Plaintiff also treated with Dr. Brummett at Allcare Family Health, P.C. for multiple problems. (R. 737-46.)  His mental health difficulties were noted.  (*Id.*)  In March 2013 he was feeling "moderately better" in terms of his "depression and irritability."  (R. 737.)  In June 2013 his "depression and irritability" were "moderately worse" since his last visit but "moderately better since onset" and the mental condition was reported to be "mostly well controlled."  (R. 740.)

9

Plaintiff was reportedly taking his medication as prescribed with no side effects. (*Id.*)  On July 19, 2013, regarding "aggravation," Dr. Brummett noted that Plaintiff reported he was feeling "moderately better" since his discharge from Philhaven. (R. 743.) Dr. Brummett recorded that Plaintiff's agitation was aggravated by marital problems and relationship discord and it was alleviated by medication and being removed from the situation. (*Id.*)  August 30, 2013, office visits notes regarding "agitation" were the same as the July notes. (R. 745.)

On December 19, 2013, Plaintiff presented to TW Ponessa & Associates for an outpatient counseling intake. (R. 755.)  He was diagnosed with Generalized Anxiety Disorder, Major Depressive Disorder, recurrent, moderate, Posttraumatic Stress Disorder, and Panic Disorder with Agoraphobia. (*Id.*)  Multiple problems were recorded, including the following: he was estranged from his wife of twenty-three years and she had a PFA against him; he had no friends and limited social interactions; he was unemployed and unable to work due to arthritis; he lived with his elderly father and was upset by another housemate; and he had no income and was seeking disability. (*Id.*)  Plaintiff's GAF was assessed to be 45 with his highest score noted to be the same. (*Id.*)  It was also noted that Plaintiff reported he was in chronic pain and was irritable as a result. (*Id.*)

**2.**   **Function Report and Hearing Testimony**

In his May 30, 2012, Function Report, Plaintiff indicated he spent his days taking care of his cats, trying to deal with his pain and mental problems, and watching TV.  (R. 227.)  He stated that he prepares simple meals, cleans, does the dishes, takes out the garbage, shops about once a week for about forty-five minutes to an hour, and goes to the corner store daily where he talks to the owner.  (R. 228-30.)

Plaintiff testified  at the December 31, 2013, ALJ hearing that he was unable to work because of his mental and physical conditions.  (R. 65.)  He added that he was unable to work because the conditions made him very irritable.  (*Id.*)

When asked what mental problems he experienced since July 7, 2013, Plaintiff stated that he has anxiety, depression, and panic attacks.  (R. 51.)  When ALJ Sweeney noted that these were labels and she wanted to know how the problems affected him on a day-to-day basis, Plaintiff responded that he gets drowsy from his medications and he told his doctor about this.  (R. 52.)  He also stated that he gets agitated very quickly.  (R. 53.)

Regarding his physical conditions, Plaintiff testified that his back and neck problems cause constant pain for which he takes Percocet which decreases the pain only some of the time.  (R. 59.) He stated that on a typical day he gets up, talks to his father, has coffee and a cigarette, walks to the corner store four blocks

11

from his house, naps for an hour to an hour and a half a day, and lies on the couch for half the day. (R. 61-62.)

The VE testified that an individual who could perform work at the medium exertional level with the nonexertional limitations identified by the ALJ could perform Plaintiff's past relevant work. (R. 82-84.) She also testified that an individual with the same nonexertional limitations but limited to the light exertional level could not perform Plaintiff's past relevant work. (R. 85.) VE Buston next testified that such an individual could perform the light exertional level unskilled jobs of cleaner housekeeper, bakery worker conveyer line, assembler electrical accessories, machine tender laminating, and small product assembler. (R. 86-87.) Upon questioning by Plaintiff's attorney, the VE testified that all jobs except cleaner housekeeper could be performed with a sit/stand option. (R. 88.)

**3.   ALJ Decision**

By decision of January 10, 2014, ALJ Sweeney determined that Plaintiff was not disabled as defined in the Social Security Act from July 7, 2013, through the date of the decision. (R. 25.) She made the following findings of fact and conclusions of law:

> 1.   The claimant meets the insured status requirement of the Social Security Act through March 31, 2016.
>
> 2.   The claimant has not engaged in substantial gainful activity since July 7, 2013, the amended alleged onset date (20 CFR 404.1571 et seq).

12

3.    The claimant has the following severe
      impairments: cervicalgia; cervical disc
      disease; cervical spondylosis;
      myofascial pain; hiatal
      hernia/gastroesophageal reflux disease
      (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment
      or combination of impairments that meets
      or medically equals the severity of one
      of the listed impairments in 20 CFR Part
      404, Subpart P, Appendix 1 (20 CFR
      404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the
      entire record, the undersigned finds
      that the claimant has the residual
      functional capacity to perform light
      work as defined in 20 CFR 404.1567(b)
      except the work must allow normal breaks
      consisting of 15 minutes in the morning
      and afternoon along with a 30 minute
      break for lunch, and one to two
      unscheduled short breaks; must not
      involve more than simple duties that can
      be learned on the job in a short period
      of time; must allow the claimant to
      avoid direct interaction (not just
      contact) with the general public and
      coworkers; and must allow the claimant
      to avoid work at a production rate pace
      requiring constant pushing or pulling of
      materials.  Additionally, the work must
      not involve the operation of hand/arm
      levers/cranks with the upper
      extremities, bilaterally, but no
      restrictions using buttons, knobs; must
      not involve the operation of foot/leg
      pedals/levers, bilaterally, but no
      restrictions using buttons, knobs; must
      not require climbing ropes, ladders,
      scaffolding, or poles; must not require
      more than occasional crouching or
      squatting, stooping (bending to waist),
      kneeling (bending at and on knees), or
      crawling (on hands and knees or feet);
      must not involve the operation of motor
      vehicles or large equipment, including

13

fork lifts; must not require more than occasional working with large vibrating objects, or surfaces, with the upper or lower extremities; and must not require working in high exposed places, or around, or with, sharp objects, or toxic or caustic chemicals.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 4, 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 7, 2013, through the date of this decision (20 CFR 404.1520(g)).

(R. 16-25.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to

14

determine whether a claimant is disabled.[1]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

     If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional

---

     [1]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at fifth step of the process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 24-25.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third

Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result

17

but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated."  *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions.  *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary,

in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless.  *See, e.g., Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review.").  An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

### A. General Considerations

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits.  *See Dobrowolsky*, 606 F.2d at 406.  Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim.  *Id.*  "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that

which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

## B.  *Plaintiff's Alleged Errors*

As set out above, Plaintiff alleges the following: 1) the ALJ erred in finding that Plaintiff's mental health impairments were nonsevere; 2) the ALJ did not properly evaluate the opinion of Robert Brummett, M.D., a treating physician; and 3) the ALJ erred in assessing Plaintiff's credibility and substantial evidence does not support her credibility evaluation. (Doc. 14 at 1-2.)

## 1.  **Mental Impairment Severity**

Plaintiff first asserts that the ALJ erred by finding that his mental health impairments were not severe. (Doc. 14 at 11.) Defendant maintains the ALJ's determination at Step Two that Plaintiff's mental health impairment was not severe is irrelevant because the ALJ did not decide the claim at that step and, therefore, this claimed error cannot be cause for remand. I agree

20

with Defendant.

As noted in *Salles v. Comissioner of Social Security*, 229 F. App'x 140 (3d Cir. 2007), when an ALJ finds in the claimant's favor at Step Two, "even if he had erroneously concluded that some of [his] impairments were non-severe, any error was harmless." 229 F. App'x at 145 n.2 (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

Here the ALJ found in Plaintiff's favor at Step Two. (R. 16-17.) Further, her RFC included certain nonexertional limitations that reflect functional difficulties related to Plaintiff's mental health impairments. (R. 18.) Therefore, this claimed error presents no basis for remand.

## 2.   Opinion of Robert Brummett, M.D.

Plaintiff next asserts that ALJ Sweeney did not properly evaluate the opinion of treating physician, Dr. Brummett. (Doc. 14 at 14.) Defendant contends the ALJ properly evaluated the opinion. (Doc. 15 at 14.) I agree with Defendant.

If a treating source's opinion on the issue of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight. 20 C.F.R. § 404.1527(c)(2). When not given controlling weight, factors considered include:

21

> (ii) Nature and extent of the treatment
> relationship. Generally, the more knowledge a
> treating source has about your impairment(s)
> the more weight we will give to the source's
> medical opinion. We will look at the
> treatment the source has provided and at the
> kinds and extent of examinations and testing
> the source has performed or ordered from
> specialists and independent laboratories.   .
> . . When the treating source has reasonable
> knowledge of your impairment(s), we will give
> the source's opinion more weight than we
> would give it if it were from a nontreating
> source.
>
> (3) Supportability. The more a medical source
> presents relevant evidence to support an
> opinion, particularly medical signs and
> laboratory findings, the more weight we will
> give that opinion. The better an explanation
> a source provides for an opinion, the more
> weight we will give that opinion.

20 C.F.R. § 404.1527(c)(2)(ii), (c)(3).  Generally more weight is given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.  20 C.F.R. § 404.1527(c)(5).  An ALJ does not err in assigning little weight to an opinion which is contained in a form in that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).

Here Dr. Brummett's opinion that Plaintiff was permanently disabled due to cervicalgia, spinal stenosis, and psychiatric disorder NOS is contained in a check-the-box form where he was required only to check a box or fill in a blank.  (R. 731-32.)  ALJ

22

Sweeney noted his opinion was a "pro forma conclusion" and it lacked sufficient rationale.  (R. 23.)  Based on *Mason* and the regulatory provisions set out above, these are appropriate bases to assign limited weight to the opinion.  This is particularly so in that the ALJ assigned significant weight to treating specialists whose opinions were based on acceptable clinical and laboratory diagnostic techniques.  (*See* R. 23.)  While, as Plaintiff asserts, some evidence may support Dr. Brummett's opinion, our inquiry is not whether an alternate conclusion could have been reached but whether substantial evidence supported the ALJ's decision.  I have concluded that the standard is satisfied and Plaintiff's claim to the contrary is without merit.

Plaintiff also maintains that 20 C.F.R. § 404.1504 requires that the disability decision of another agency be considered as well as the evidence the agency used to make the decision.  (Doc. 14 at 16; Doc. 16 at 5.)  Here Plaintiff does not provide evidence of a disability decision made by another agency.  Rather, he merely points to evidence submitted to the Department of Welfare in a check-the-box form which I have determined the ALJ properly considered.  (*Id.*)  Therefore, I conclude the ALJ did not err in assigning limited weight to Dr. Brummett's opinion and this claimed error is not cause for reversal or remand.

**3.    Credibility Evaluation**

Plaintiff claims the ALJ's credibility assessment is error

23

because she did not apply correct legal standards and it is not supported by substantial evidence.  (Doc. 14 at 20.)  Defendant argues that substantial evidence supports the credibility determination.  (Doc. 15 at 20.)  I conclude this claimed error is not cause for reversal or remand.

The Third Circuit Court of Appeals has stated that "[w]e 'ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor.'"  *Coleman v. Commissioner of Social Security*, 440 F. App'x 252, 253 (3d Cir. 2012) (not precedential) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)).  "Credibility determinations are the province of the ALJ and should only be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schwieker*, 717 F.2d 871, 873 (3d Cir. 1983)).

Social Security Ruling 96-7p provides the following guidance regarding the evaluation of a claimant's statements about his or her symptoms:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true.  When

> evaluating the credibility of an individual's
> statements, the adjudicator must consider the
> entire case record and give specific reasons
> for the weight given to the individual's
> statements.

SSR 96-7p. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p.

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. First, symptoms such as pain, shortness of breath, and fatigue will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. *Id.* In so doing, the medical evidence of record is considered along with the claimant's statements. *Id.*

The regulations provide that factors which will be considered relevant to symptoms such as pain are the following: activities of daily living; the location, duration, frequency and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications

25

taken to alleviate symptoms; treatment received other than medication intended to relieve pain or other symptoms; other measures used for pain/symptom relief; and other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

Here the ALJ considered many of the identified factors and noted that Plaintiff's complaints were extensive but his allegations were not supported by objective and clinical findings and were not consistent with his treatment.  (R. 19-24.)   ALJ Sweeney's analysis is factually accurate and legally adequate. Plaintiff does not dispute the factual accuracy of the ALJ's analysis; Plaintiff's criticism of the legal adequacy is conclusory.

First, Plaintiff states that his activities of daily living do not show that he could perform a full-time position because he is able to stop when needed and postpone activities due to his symptoms when he is at home.  (Doc. 14 at 21-22.)  Importantly, the ALJ did not rely only on Plaintiff's activities of daily living in finding that his allegations of disabling pain and psychological problems were not fully credible.  (R. 19-24.)  As noted above, ALJ Sweeney looked at many legally relevant factors in making her credibility determination.

Plaintiff's assertion that the ALJ did not properly consider

medication side effects (Doc. 14 at 22) is also without merit.  She only need consider credibly established limitations, *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999), and the records show that Plaintiff routinely denied side effects from the medication except for mild sedation.  (*See*, *e.g.*, R. 703, 705, 708, 712, 714, 716.) Similarly, Plaintiff does not point to any evidence supporting his subjectively claimed lifting and walking limitations or his need to lie on the couch for four hours per day and take daily naps. (Doc. 14 at 22.)

Finally, Plaintiff argues that the ALJ erred because she failed to apply the medical vocational guidelines as he should have been considered an individual approaching advanced age who was capable of only unskilled sedentary work and therefore should have been considered disabled pursuant to non-mechanical application of Medical Vocational Guideline 201.09.  (Doc. 14 at 22-23.) Plaintiff's assertion that "[a] careful review of the record" shows that Plaintiff is limited to unskilled sedentary work (*id.*) is conclusory.  Furthermore, the ALJ considered this argument (R. 23-24), but concluded Plaintiff was capable of performing work at the light exertional level with certain nonexertional limitations.  (R. 18.)  Plaintiff has not shown that this determination is not based on substantial evidence.  Therefore, this claimed error is not cause for reversal or remand.

27

## V. Conclusion

For the reasons discussed above, Plaintiff's appeal of the Acting Commissioner's decision is properly denied.  An appropriate Order is filed simultaneously with this action.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: December 7, 2015